[No. 16781.   Department One.   June 23, 1922.]

C. F. Eikenbarry, *Respondent*, v. Northport Smelting and Refining Company, *Appellant*.[1]

Master and Servant (20-1)—Workmen's Compensation Act—Medical Treatment—Contract—Termination—Notice and Hearing —Statutes. Under Laws 1919, p. 305, § 5, authorizing the state board to take a particular injured workman from the contract doctor, notice and hearing to the employer is not a condition precedent.

Same (20-1)—Medical Treatment—Powers of Board—Statutes —Construction. Laws 1919, p. 305, § 5, authorizing the state board to take a particular injured workman from the contract doctor without notice to the employer is not unconstitutional; since the employer's right to question the change and the charges answers all the requirements of due process of law.

Same (20-1)—Medical Treatment—Termination of Contract. Laws 1919, p. 305, § 5, authorizing the state board to take an injured workman from the contract doctor applies to cases of insufficient treatment as well as those of no treatment; the provision of Rem. Comp. Stat., § 7715, providing a maximum fee bill being a sufficient guard against abuses.

Same (20-1). Taking an injured workman from the care of a contract doctor is justified, where a fracture of the leg has been improperly treated and the hospital did not have the facilities to perform the necessary operation.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 6, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court.   Affirmed.

*W. H. Plummer, W. Lon Johnson,* and *John H. Wourms,* for appellant.

*Hamblen & Gilbert,* for respondent.

Fullerton, J.—The appellant, Northport Smelting and Refining Company, is a corporation engaged in the business of smelting and refining ores, at North-

[1]Reported in 208 Pac. 32.

port, in this state. Its business is extra-hazardous within the meaning of that term as it is used in the workmen's compensation act. The company made provision for the care of its injured workmen according to the alternative method provided in the act named; that is to say, with the consent of a majority of its workmen and with the approval of the industrial insurance commission, it entered into a contract for their treatment with a Dr. Goss, who maintained a hospital near the plant of the appellant.

On July 21, 1919, one Harry L. Brilliard, an employee of the appellant, fell from a building on which he was working and suffered a fracture of the lower part of the femur of his leg, which affected the knee joint. He was immediately taken to the hospital mentioned, where he was treated by Dr. Goss; the treatment continuing regularly until the patient was able to leave the hospital, and then irregularly until the following September. Dr. Goss left the hospital at about that time, turning the same over to a Dr. Robinson. In talking over with Dr. Robinson the patients then under his care, Dr. Goss mentioned Brilliard, saying that his cure had been effected. Shortly after Dr. Goss had left the hospital, Brilliard appeared there for further treatment. He complained of the condition of his leg, saying that he was unable to use it in any manner and that it at all times caused him great pain. Dr. Robinson examined the injured leg, found that the broken bones were not in apposition, and that there had been only a partial union. He advised the patient that a further operation was necessary in order to effect a cure, told him that the facilities at the hospital were not sufficient to enable him to undertake the operation there, and advised him to consult with the respondent, Dr. Eikenbarry, at the city of Spokane, and also to consult with the medical department of the indus-

trial insurance commission at that place. Brilliard thereupon went to Spokane and consulted with Dr. Eikenberry, who advised him to consult with the local board at Spokane. This he did, whereupon the local aid board referred the case to the state medical board of the insurance department, who directed that the patient be put in the charge of Dr. Eikenbarry for such further treatment as the injury required. Dr. Eikenbarry took the patient to a local hospital, reset the injured femur and attended him until attention was no longer essential.

This action was brought by Dr. Eikenbarry against the smelting company to recover for the services performed by him, and to recover the hospital expenses, the account for which he holds an assignment. Recovery was awarded him in the court below, and from the judgment entered, the smelting company appeals.

The appellant does not question the fact that the injured workman required the treatment afforded him by Dr. Eikenbarry, nor does it question the amount of either his or the hospital charges; the complaint is that the medical board acted in excess of its authority and in a manner not authorized by the statute when it took the injured workman from the care of the hospital physician and placed him in the care of another. The statute thought to have been violated is § 5, p. 305, ch. 129, of the Laws of 1919. This section, after providing that a contract for the care and cure of injured - workmen, such as was entered into in this instance, may be entered into by an employer engaged in an extra-hazardous business, further provides that:

"During the operation of any such contract any interested workman may complain to the state board that the service and care actually rendered thereunder are not up to the standard provided in section 6604-36, and if upon a hearing had upon notice to the employer and

workmen interested thereunder, the state board shall sustain the complaint, it may make an order that the contract shall terminate unless the defect or deficiency complained of shall be remedied to its satisfaction within a period of time to be fixed in such order. Notice to the workmen may be effected in the manner provided in section 6604-33. The employer or any interested workman may appeal from such decision to the courts in the manner provided in section 6604-20. During the appeal the contract shall remain in force and operation, but the costs of the appeal shall be paid out of the medical aid fund only in case the decision of the state board is reversed by the court. If during the operation of any such contract, any injured workman shall not receive medical or surgical treatment with reasonable promptness upon the occurrence of his injury, or at any time during his treatment, his local aid board may provide such treatment during the emergency at the expense of his employer, who may charge such expense against such contract, and such emergency treatment shall continue until supplanted by like treatment under such contract, notwithstanding the pendency of an appeal from such action of the local aid board.''

Stating the appellant's contention more concisely, it is contended first, that, under these provisions of the statute, notice to the employer and a hearing on the question is a necessary condition precedent to the right of the state board to take an injured workman from the care of the contract physician and place him in the care of another, if the employer is to be charged with the expense of his treatment; and, second, that, conceding the power vests in the board without such notice, there is here no sufficient evidence to show that the change was necessary.

Noticing the first objection, it will be observed that the statute contains two distinct provisions. The one provides for a termination by the state board of the contract entered into for the care of injured workmen

and, as to this, notice to the employer and a hearing is a condition precedent to the right of the board to act. The second provision, however, has relation to the particular injured workman. It provides that, if he shall not receive medical or surgical care with reasonable promptness after the occurrence of his injury, "or at any time during his treatment," the local aid board may so provide at the expense of his employer. Notice and hearing is not made a condition precedent to the granting of this form of relief. Indeed, it could not well be so provided. The necessities of the case in many instances will not brook of delay, and in every instance delay cannot be but injurious to the patient. But the statute is none the less valid because of this omission. The employer, unless he so wills it, cannot be finally charged with the cost of the care of a workman treated by an other than the contract physician until he has an opportunity to question the necessity for the change of care, the amount of the charges, and the regularity of the proceedings of the board. He may make these defenses in an action to recover the cost, and this answers all of the requirements of due process of law.

But it is argued that the statute provides for treatment by other than the contract doctor only in the case treatment is not afforded with reasonable promptness; not in an instance where treatment is afforded but which may be improper or inefficient. But while the language used in the act may not be the most appropriate that could have been chosen to express the idea, yet we think its purpose was to authorize the interference of the state board in cases of improper or insufficient treatment as well as in those where no treatment at all is attempted. The entire act relating to the particular subject cannot well be quoted here, but its perusal leaves no doubt as to the intention of the legis-

lature. Its purpose was to provide for proper and efficient treatment as well as prompt treatment, and it does no violence to the language used to give it a meaning which will effect that purpose. The argument that this construction of the statute is liable to lead to abuses, we cannot think well founded. The power of the medical board is not unlimited. They could not "legally send an employee to Mayo Brothers at Rochester, Minnesota, and create a liability of five thousand dollars or ten thousand dollars" against the employer. By § 6 of the act of 1917[1] (p. 87, ch. 28), before cited, the state medical board is required to make and promulgate a fee bill of maximum charges to be made by physicians performing services such as were here rendered, and by the act of 1919, in the section from which we have quoted (p. 305, § 5, ch. 129), it is provided that the "cost of such emergency treatment shall not exceed the rates specified in the fee bill." Seemingly this is a sufficient guard against abuses or extravagant and excessive charges.

The second branch of the contention requires no extended discussion. At the time the state board placed Mr. Brilliard in the hands of Dr. Eikenbarry his leg was in a serious condition. If the ends of the bones had ever been placed in apposition, they were then not so. There was an overlapping of the bones at the place of the fracture for as much as two and one-half inches. The upper part of the fracture extended down into the knee joint, causing a shortening of the leg and a stiffening of the joint. The patient could not even touch his foot to the ground, much less bear any weight upon the leg. Even the physician who succeeded Dr. Goss says that the injury had been improperly treated, and that further treatment was

[1]See Rem. Comp. Stat., § 7715.

17—120 WASH.

necessary to secure the result which could have been secured by proper treatment in the first instance. The physician also says, as we have before noted, that the hospital did not have the facilities to enable him to successfully perform the second operation. Manifestly there was here a sufficient cause for the action of the board, and no abuse of power can be charged against it.

The judgment is affirmed.

PARKER, C. J., MITCHELL, TOLMAN, and BRIDGES, JJ., concur.